## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CHRISTIE MICHELLE KIEHL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. CIV-20-281-RAW-SPS** |
| ) | |
| **KILOLO KIJAKAZI,[1]** ) | |
| **Acting Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

The claimant Christie Michelle Kiehl requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-four years old at the time of the administrative hearing (Tr. 32). She has a high school education and past relevant work as a corrections officer, explosive worker on an army base, and security guard (Tr. 174). The claimant alleges that she has been unable to work since June 1, 2009, due to brain tumors, stage 3 kidney disease, high cholesterol, high blood pressure, acid reflux, diabetes, and vision problems (Tr. 173).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-05, on January 8, 2019. Her application was denied. ALJ J. Leland Bentley conducted an administrative hearing and found that the claimant was not disabled for the closed period from June 1, 2009 through her date last insured of March 31, 2014, in a written opinion dated January 13, 2020 (Tr. 13-22). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step two of the sequential evaluation. He found that the claimant had the medically determinable impairments of hypervascular liver mass, pulmonary nodules, diabetes mellitus type II, peripheral neuropathy, bilateral myopia,

GERD, left knee degenerative joint disease, status post arthroscopy, mood disorder unspecified, and impulse control disorder not otherwise specified (Tr. 16). Additionally, he found that, through her date last insured (March 31, 2014), there was insufficient evidence to establish meningioma, chronic kidney disease stage three, hypertension, or hyperlipidemia (Tr. 16). The ALJ found that the claimant's medically determinable impairments were not severe as they did not significantly limit the claimant's ability to work for twelve consecutive months (Tr. 16). Thus, the ALJ determined that the claimant was not disabled (Tr. 16-21).

## Review

The claimant contends that the ALJ erred by: (i) finding that claimant had no severe impairment or combination of impairments at step two, and (ii) failing to properly assess the consistency of her statements. The undersigned Magistrate judge is not persuaded by the claimant's arguments.

The medical record reflects that the claimant was assessed with impulse control disorder in 2007, when she sought treatment while employed as a corrections officer, reporting that she had threatened to blow inmates up (Tr. 233). On February 24, 2010, mental health treatment notes indicate the claimant had last been on medication in 2007 because it had increased her blood pressure. At the time of the 2010 appointment, she reported being angry all the time (Tr. 239). She again reported anger problems at a new patient evaluation with Behavioral Health on July 25, 2012, and requested medication for her anger and impulse control problems (Tr. 244).

4

As to her physical problems, the claimant had a CT scan in August 2011, which revealed a consistent diagnosis of focal nodular hyperplasia or hepatic adenoma, including bilateral pulmonary nodules (Tr. 404-405). Prior to her alleged onset date, a January 2009 CT of the pelvis and abdomen had identified no mass lesions, but the presence of bilateral cyst (Tr. 854). A May 2013 CT scan of the abdomen and pelvis revealed a slightly enlarged hypervascular right hepatic lobe mass, suggesting adenoma or focal nodular hyperplasia, as well as stable pulmonary nodules (Tr. 703).

The claimant was also treated for recalcitrant GERD in the spring of 2013, and treatment notes indicate she denied pain but reported frequent reflux that interfered with her sleep (Tr. 392, 677). She was supposed to be scheduled for a barium swallow but, if done, it was not contained in the record (Tr. 397). The claimant underwent a left knee arthroscopy on July 27, 2013, and completed an eight-week course of physical therapy, meeting all goals for discharge on September 12, 2013 (Tr. 373-373, 669). Previous x-rays from 2011 had been unremarkable, although the claimant reported pain (Tr. 711). At an eye exam on September 27, 2013, the claimant was assessed with type II diabetes with no ocular manifestation as well as myopia, but the eye exam was "normal/negative" (Tr. 372). On April 21, 2014, the claimant was treated for a muscle spasm of the abdominal wall in the epigastric region and treatment notes reflected a report of a liver mass (last updated on December 21, 2010), as well as pulmonary nodules (last updated January 4, 2013) (Tr. 367).

State reviewing physicians determined initially and upon review that there was insufficient evidence to rate the claimant's physical and mental impairments (Tr. 40-42, 51-53).

At the administrative hearing, the claimant testified that, prior to 2014, she developed headaches every day, which lasted two to three days (Tr. 33). She testified that she struggled with anger and impulse control, and that she had vision problems to where she could not see well (Tr. 35).

In his written opinion at step two, the ALJ summarized the claimant's hearing testimony as well as the medical evidence related to the closed period and records prior to the alleged onset date (Tr. 17-21). Specifically, he noted hepatic lesions identified in 2006, for which she underwent a cholecystectomy in 2008, and that a January 2009 CT scan revealed that the liver remained within normal limits (Tr. 17). He further noted the 2011 and 2013 pelvic CT scans and that in 2013 her hypervascular right hepatic lobe mass was slightly enlarged from before (Tr. 18). The ALJ further pointed out that throughout the period at issue, the claimant reported lifting a 20-pound dumbbell with her legs, playing basketball, helping her husband lift a 250-pound tire, and exercising with a punching bag, all of which were inconsistent with her alleged disabling impairments (Tr. 18). The ALJ recognized the claimant's complaints of lower back pain, headaches, shortness of breath, acid reflux, and visual problems, but that she also had reported her headaches responding to Advil, that she "rarely if ever" exhibited abnormal respiratory findings, that there were few if any issues with her blood sugar or vision during this time, and that her acid reflux was within normal limitations upon being prescribed medication (Tr. 18-19). He did note

the claimant's left knee arthroscopy on July 26, 2013, but found that she was discharged on September 12, 2013, having met all goals (Tr. 19). The claimant endorsed anger and impulse control issues a couple of times during the record, but the ALJ noted that she was restarted on a medication but then did not follow up with any further mental health treatment (Tr. 20). The ALJ thus concluded that the claimant did not have a severe impairment.

The claimant first argues that the ALJ failed to perform a proper step two analysis. A claimant has the burden of proof at step two of the sequential analysis to show that she has an impairment severe enough to interfere with the ability to work. *Bowen v. Yuckert*, 482 U.S. 137 (1987). This determination "is based on medical factors alone, and 'does not include consideration of such vocational factors as age, education, and work experience.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (*quoting Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)). Although a claimant "must show more than the mere presence of a condition or ailment[,]" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), the claimant's step-two burden only requires a "de minimis" showing of impairment. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (*citing Williams*, 844 F.2d at 751). A finding of non-severity may be made only when the medical evidence establishes a slight abnormality or a combination of slight abnormalities which would not have any more than a minimal effect on an individual's ability to work. *Hinkle*, 132 F.3d at 1352.

In this regard, the ALJ found that the claimant's medically determinable impairments (or combination thereof) did not significantly limit her ability to perform basic

7

work-related activities, nor did they meet the durational requirements. Focusing on the claimant's arguments, the ALJ properly noted the claimant's left knee arthroscopy and subsequent physical therapy, but that such treatment did not meet the durational requirement. The claimant further attempts to tie a brain issue to her mental health problems, noting that she had a 2018 craniotomy and became more mellow after it was performed, but there are no records during the relevant time frame to support this connection. The claimant likewise contends that her mental impairments meet the durational requirements given her reports of anger and impulse control disorder diagnosis, but most of the arguments were based on the claimant's own reports (addressed below), not on the medical record which contained only two mentions of anger/impulse control issues, several years apart.

The claimant also appears to suggest that the ALJ should have either followed up with the physician who assessed the claimant's poor impulse control or ordered a consultative examination. But the ALJ does not have a duty to order a consultative examination and therefore has "broad latitude" in deciding whether or not to do so. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (*citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990)). "Ordinarily, the claimant must in some fashion raise the issue sought to be developed, which, on its face, must be substantial[.]" *Id.* (citation omitted). "[T]he ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins*, 113 F.3d at 1169. "Thus, the

8

relevant issue before this Court is whether the plaintiff demonstrated there is sufficient evidence of a reasonable possibility that a disability exists, and that a consultative exam would be of material assistance in resolving the issue of disability." *Baraesheia M. P. v. Kijakazi*, 2021 WL 2954003, at \*6 (N.D. Okla. July 14, 2021).

Here, the claimant did not raise the issue at the administrative level, and there is nothing in the evidence to indicate that further evaluation was necessary. *See* 20 C.F.R. § 404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."). While additional evidence may have been helpful given the sparse evidence in the record, the claimant has not met her burden establishing such necessity here. *See, e. g.*, *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (finding "no need" to develop the record with a consultative examination where "sufficient information existed" for the ALJ to make the disability determination.).

Next, the claimant contends that the ALJ erred in analyzing her subjective statements, particularly as related to her pain, and to her reports of anger and poor impulse control. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3]    Tenth Circuit

precedent agrees but characterizes the evaluation as a three-part test.  *See, e. g., Keyes-*

*Zachary,* 695 F.3d at 1166-67 (*citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir.

1987)).[4]  As part of the symptom analysis, the ALJ should consider the factors set forth in

20 C.F.R. § 416.929(c)(3), including: (i) daily activities; (ii) the location, duration,

frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating

factors; (iv) the type, dosage, effectiveness, and side effects of any medication the

individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any

other measures the claimant uses or has used to relieve pain or other symptoms; and

(vii) any other factors concerning functional limitations.  *See* Soc. Sec. Rul. 16-3p, 2017

WL 5180304, at *7-8.  An ALJ's symptom evaluation is entitled to deference unless the

Court finds that the ALJ misread the medical evidence as a whole.  *See Casias,* 933 F.2d

at 801.   An ALJ's findings regarding a claimant's symptoms "should be closely and

affirmatively linked to substantial evidence and not just a conclusion in the guise of

findings."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).  The

ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]"

---

[3]   SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996).  *See* SSR 16-3p, 2017 WL 5180304, at *1.  SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character."  *Id.*  at *2.

[4]   Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence.  *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*).  The Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

*Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at \*10.

As outlined above, the Court finds that the ALJ set out the appropriate analysis and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his evaluation is entitled to deference. *See Casias*, 933 F.2d at 801.

The ALJ specifically noted every relevant medical record available in this case, gave reasons for his RFC determination and ultimately found that the claimant was not disabled. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (*citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946). Accordingly, the decision of the Commissioner should be affirmed.

**Conclusion**

As set forth above, the undersigned Magistrate Judge PROPOSES that correct legal standards were applied by the ALJ and the decision of the Commissioner is therefore supported by substantial evidence. Accordingly, the undersigned RECOMMENDS that the decision of the Commissioner be AFFIRMED. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 24th day of February, 2022.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**